Paul B. Mengedoth, Esq. (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail:  paul@mengedothlaw.com

Sylvia A. Goldsmith, Esq.*
**GOLDSMITH & ASSOCIATES, LLC**
20545 Center Ridge Road, Suite 120
Rocky River, OH 44116
Tel: (440) 934-3025
E-mail:  goldsmith@goldsmithlawyers.com

James A. Francis, Esq.*
John Soumilas, Esq.*
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel:  (215) 735-8600
E-mail:  JFrancis@consumerlawfirm.com
E-mail:  JSoumilas@consumerlawfirm.com

*Counsel for Plaintiff Brandon M. Walsh
and all similarly situated individuals.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| BRANDON M. WALSH, Individually and on behalf of all others similarly situated, | ) ) ) ) | **No.** _____ |
| Plaintiff, | ) ) | |
| v. | ) | **CLASS ACTION COMPLAINT** |

FEDERAL NATIONAL MORTGAGE     )          **JURY TRIAL REQUESTED**
ASSOCIATION                   )
                              )
              Defendant.      )

## INTRODUCTION

1.      Plaintiff, Brandon M. Walsh, a mortgage applicant subjected to the repeated violation of, and intentional non-compliance with, the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §1681 *et seq.*, of Defendant, Federal National Mortgage Association ("Fannie Mae"), brings this action on behalf of himself and other similarly-situated persons as defined below, to redress Defendant's past, present and continuing violations of the FCRA, including but not limited to the provisions contained in 15 U.S.C. § 1681*e*(b).

2.      As a well-known colossus in the secondary mortgage loan market, Fannie Mae also silently plays a dominant role in home mortgage loan origination.  While its involvement in the loan origination process is largely unknown to the public, Fannie Mae exerts a tremendous influence on each step of the application process.  Through its automated underwriting system that it requires lenders to use throughout the country, Fannie Mae obtains, reviews and evaluates consumer credit information in advance of loan origination for its own underwriting purposes; charges lenders, brokers and consumers for this information through the generation and publication of consumer reports; and dictates to lenders and consumers the outcome of mortgage loan applications, including rates and terms.  This process enables Fannie Mae to reap

significant profits by carrying out a business model based on risk-based pricing and the collection of fees for each loan application run through its system.

3.     However, despite its manifold roles as a user of credit information, a consumer reporting agency and a reseller of credit information in a typical mortgage transaction, Fannie Mae has deliberately made itself unaccountable to consumers, and intentionally fails to comply with any of the requirements imposed on it by the FCRA.

4.     Fannie Mae's flagrant disregard for the law apparently results from an arrogant position that, as a government sponsored enterprise, it is somehow exempt from the grave responsibilities imposed by the FCRA on every other company that uses, disseminates and/or sells consumer credit information.   As such, mortgage applicants like Plaintiff are harmed in that they are denied certain rights guaranteed by the FCRA, including the ability to discover what information may have impacted their  loan eligibility, the right to request and/or dispute the information that was considered in connection with their applications, and the right to expect that their credit information was reported with maximum possible accuracy.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § § 1681p and 28 U.S.C. § 1337.  Venue in this judicial district is proper because Mr. Walsh resides in this judicial district and many of the facts relevant to this Complaint occurred in this judicial district.

## PARTIES

6.     Mr. Walsh is an adult individual who is a resident of Queen Creek, Maricopa County, Arizona.

7.     Fannie Mae is a publicly held corporation that has a principal place of business located at 3900 Wisconsin Ave., NW Washington, DC 20016-2892, and which regularly conducts business throughout Arizona and in all fifty (50) states in the United States.

## GENERAL FACTUAL ALLEGATIONS

**A.     Fannie Mae and Its Automated Desktop Underwriter System.**

8.     Fannie Mae is a shareholder-owned for-profit corporation that is publicly traded on the U.S. Stock Exchange.

9.     Fannie Mae is also known as a government-sponsored enterprise ("GSE") because it was chartered by Congress to provide a secondary market for home mortgages.  In exchange for its agreement to act as a mortgage loan purchaser in the secondary market, Fannie Mae's charter provides it with certain financial advantages and incentives.

10.    Due to federal banking regulations requiring most primary mortgage lenders to maintain minimum capital, after originating mortgage loans, many mortgage lenders in the United States sell their loans to Fannie Mae.

4

11.     Fannie Mae, together with its "little brother" Freddie Mac, purchase or guarantee more than half of all mortgages originated in the United States, depending upon market conditions and consumer trends.

12.     Fannie Mae purchases what are known as conventional conforming loans. These are loans that are not insured or guaranteed by the federal government, are less than $417,000, and have certain prescribed risk characteristics. Fannie Mae publishes its *Selling Guide* which outlines the specific requirements necessary for eligibility for Fannie Mae purchase.

13.     Fannie Mae buys these conventional conforming loans and either bundles them as securities and sells them to investors or holds the loans in its own portfolios.

14.     Unknown to the public, and due to its status as one of the two (2) dominant secondary market purchasers of mortgages, along with mortgage lenders' interest in assuring the sale of their loans, Fannie Mae has entered into contracts with numerous mortgage lenders and/or brokers throughout the United States which, in exchange for its advance commitment to buy mortgage loans from these lenders in the secondary market, allow it to dictate the underwriting terms and conditions of most of the conventional conforming loans that these lenders originate.

15.     For the mortgage lenders and brokers who have contracts with Fannie Mae and who sell mortgage loans to Fannie Mae in the secondary market, Fannie Mae requires that the mortgage applications be submitted through its *Desktop Underwriter* automated underwriting system ("DU System") in order to get a quick approval or

denial, the best lender/broker pricing, higher debt-to-income ratios, higher loan-to-value ratios, better loan programs not available outside the DU System, and risk-based pricing, before any commitment is made to the prospective borrowers.  For these lenders, Fannie Mae leases or licenses its DU System for use by the lenders or mortgage loan brokers and charges these lenders or brokers a fee for each mortgage application run through the DU system.

16.    Fannie Mae's DU System is also used in connection with non-conforming loans that Fannie Mae is not permitted to purchase pursuant to its congressional charter.  These other types of loans include, but are not limited to FHA, Jumbo, and sub-prime loans.

17.    Through the DU System, Fannie Mae gathers data from an applicant's three-file and/or "tri-merge" consumer report from either a reseller of credit information, or one or more of the three (3) major credit repositories, Equifax, Trans Union and Experian ("National Repositories), which Fannie Mae sells to the mortgage lender or broker.

18.    And while a mortgage broker or lender may order a credit report from a reseller or National Repositories during the application process as required by the DU Guidelines, the DU System automatically uploads the data and other consumer credit information it gathers from one of the National Repositories or a reseller.

19.    Fannie Mae's DU System then reviews, assesses and/or evaluates all of the information it obtains from the lender and/or broker, and the consumer reporting

agencies and/or resellers, including the consumer reports, and generates its own report, known most frequently as the *Desktop Underwriting Findings* report ("DU Findings Report").

20.    The DU Findings Report is a detailed report documenting, among other things, the applicant's credit history, credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, assets, income, debt-to-income ratio, and employment.  Further, the DU Findings Report contains findings, conclusions, comments and results reached by Fannie Mae concerning the applicant's credit and his or her "eligibility" for loan purchase by Fannie Mae, as well as Fannie Mae's recommendation as to whether the lender should grant or originate the loan, deny the loan or approve it subject to certain conditions being satisfied.  These DU Findings Report determinations are made for all types of loans submitted through the DU System, whether or not Fannie Mae purchases them in the secondary market.

21.    Upon information and belief, Fannie Mae's contracts with its mortgage lender clients prohibit lenders and/or brokers from disclosing all or part of its DU Findings Reports, and Fannie Mae intentionally enforces a policy of restricting disclosure of the DU Findings Reports from the very consumers to whom they pertain.

22.    If Fannie Mae determines that a consumer is ineligible for loan purchase, or may only be approved subject to a change in loan terms, a higher interest rate, the imposition of additional fees, charges, documentation or the satisfaction of certain underwriting conditions based on information contained in the consumer report it

obtains, it does not provide the consumer with any notice of the adverse action it has taken, in violation of the FCRA.

23.     Further, despite the fact that it compiles, issues, maintains and sells its DU Findings Reports to lenders and/or brokers on a nationwide basis, Fannie Mae does not provide consumers with disclosures of the files it maintains on them, the sources of the information it reports, summaries of their rights, does not maintain any toll-free telephone numbers available to consumers and does not investigate any co disputes, all also in further violation of the FCRA.

**B.    The Downturn in the Economy Resulted in Many Homeowners Negotiating Short Sales of Real Estate.**

24.     Plaintiff Walsh, like all other class members herein, owned a piece of real estate that was subject to a mortgage lien.

25.     In 2007, the United States economy suffered a dramatic downturn.  The housing bubble burst, and there was a significant negative domino effect in the lending industry as well as the investment market.  Hoards of homeowners found themselves obligated on mortgages significantly greater than the values of their underlying homes.

26.     Short sales – a lender-approved sale of a home for less than the outstanding mortgage amount – emerged as a leading response to the growing crisis.

27.     By 2012, the Federal Housing Finance Agency ("FHFA") announced measures to make short sales easier for owners of underwater homes. The significant

growth in approved short sales has helped buoy the housing market and push distressed house prices higher in the past few years.

28.     Plaintiff Walsh, like all other class members herein, negotiated a short sale of his real estate.

29.     Pursuant to Fannie Mae's published Desktop Underwriter Guidelines ("DU Guidelines"), Fannie Mae will not even consider purchasing a conventional mortgage loan if the applicant has had a short sale in the two (2) years prior to the current obligation.  In other words, Plaintiff Walsh, like all other class members herein, would not be able to qualify for conventional mortgage financing for a minimum of two (2) years following his short sale.

30.     Plaintiff Walsh, like all other class members herein, waited his obligatory two (2) years before applying for a new conventional mortgage loan.

31.     Specifically, in April and May of 2013, Plaintiff Walsh applied for a residential mortgage loan with Wells Fargo and next with Academy Mortgage.  In both instances, Plaintiff Walsh was denied conventional mortgage financing.

32.     In September or October of 2013, Plaintiff Walsh again applied for a residential mortgage loan with Desert Schools Federal Credit Union and again was denied conventional mortgage financing.

33.     In May of 2014, Plaintiff Walsh again applied for a residential mortgage loan with Academy Mortgage and again was denied conventional mortgage financing.

34.     For Plaintiff Walsh, like every class member herein, the basis for each denial was a DU Findings Report that contained a "Refer with Caution" recommendation, which amounts to a credit denial per Fannie Mae's Selling Guide. *See e.g.* Fannie Mae's DU Findings Reports issued to Academy Mortgage and Desert Schools (copies of which are attached hereto as Exhibit 1).

35.     For Plaintiff Walsh, like every class member herein, each "Refer with Caution" recommendation resulted from the fact that Fannie Mae identified the previous short-sale as a "foreclosure," which automatically disqualifies the applicant for conventional mortgage financing for seven (7) years.

36.     Plaintiff Walsh, like all other class members herein, suffered economic and/or non-economic harm as a result of this denial of his mortgage application.

**C.     DU Wrongly Flags Short Sales (and Any Serious Mortgage Delinquency) As A Foreclosure.**

37.     On March 12, 2013, Fannie Mae released a "Desktop Underwriter Clarification" in response to mounting "requests for clarification on how Desktop Underwriter (DU) identifies a foreclosure and a pre-foreclosure sale[.]"  See Desktop Underwriter Clarification (a copy of which is attached hereto as Exhibit 2).

38.     In this regard, Fannie Mae described DU's identification of a pre-foreclosure or short sale as follows:

**Preforeclosure Sale Identification**

A preforeclosure sale or short sale is the sale of a property in lieu of a foreclosure resulting in a payoff of less than the total amount owed, which was pre-approved.  At this time, there are no codes provided in the credit report data received by DU that specifically identify a preforeclosure sale.

With DU Version 8.2 in December 2010, DU began issuing a message based on the presence of Remarks Codes E0047 (Settlement accepted on this account), T0140 (Settled for less than full balance), or R0107 (Account legally paid in full for less than the full balance) on a mortgage or HELOC account.  However, because those codes can be used on any account for any reason, DU is not able to use those codes to identify a preforeclosure sale with 100% accuracy, so it is not able to fully automate the preforeclosure sale waiting period or eligibility requirements.

When DU issues the preforeclosure sale message the lender must confirm that the preforeclosure sale had been completed two or more years from the credit report date, and must confirm that the loan casefile complies with all other requirements specific to preforeclosure sales as specified in the Fannie Mae *Selling Guide*.

*See* Exhibit 2 at 1 of 3.

39.     Per the DU Findings Reports used to deny Plaintiff Walsh's mortgage applications, like all other class members herein, Fannie Mae specifically and correctly identified the previous short sale.

40.     So long as the pre-foreclosure or short sale was completed more than two (2) years before the current application, that prospective loan is still eligible for purchase by Fannie Mae and the DU System will automatically not refer, i.e., deny, the application.  *See* Selling Guide, Part B, Subpart 3, Chapter 5 (relevant excerpts of the 2011 and 2013 versions of which are attached collectively hereto as Exhibit 3) at 433-434 and 464-465, respectively.  *See also* Exhibit 2 at page 2 of 7.

41.     In describing a DU Finding's Report identification of a foreclosure in the DU System, Fannie Mae represents as follows:

**Foreclosure Identification**

When reviewing the credit report data received, DU reviews the manner of payment (MOP) codes and Remarks Codes associated with each tradeline, and the Public Record information to determine if a foreclosure has occurred.

Mortgage accounts, including first liens, second liens, home improvement loans, HELOCs, and mobile home loans, will be identified as subject to a foreclosure if there is a current status code or MOP code of "8" (foreclosure) or "9" (collection or charge-off); or if there is a foreclosure-related Remarks Code present in the credit report data and associated to the tradeline.  If a foreclosure was reported within the seven-year period prior to the report date associated with the tradeline, the loan casefile will receive a Refer with Caution recommendation and will be ineligible for delivery to Fannie Mae as a DU loan.

*See* Exhibit 2 at 1 of 3.

42.     Per this "Desktop Underwriter Clarification," Fannie Mae admits that accounts reported by the original creditor merely as "collection or charge-off" – accounts admittedly not in foreclosure – will be identified by the DU System as having been in foreclosure.

43.     Any prospective loan that DU identifies as having a foreclosure in the previous seven (7) years will automatically be ineligible for purchase by Fannie Mae. See Exhibit 3 at 464.

44.     Thus, for Plaintiff Walsh, like all other class members herein, even though a DU Report correctly identified a previous short sale, acknowledging that so long as that short sale was more than two (2) years ago, the same DU Report also manufactured a non-existent foreclosure and referred, i.e., denied, the application accordingly.

45.     This incorrect identification of a foreclosure prevented Plaintiff Walsh, like all other class members herein, from obtaining his conventional mortgage financing at the terms originally negotiated.

12

**D.** **Fannie Mae Acknowledges Deficiency in the DU System and DU Finding Reports**

46.     Upon information and belief, Plaintiff Walsh is only one of hundreds of thousands (if not greater numbers) of homeowners who have had a short sale misidentified by a DU Findings Report as a foreclosure, thereby preventing them from obtaining conventional financing or refinancing.

47.     In May 2013, the Consumer Protection Subcommittee of the U.S. Senate Committee on Commerce, Science & Transportation held a hearing on Capitol Hill to address a variety of problems plaguing the consumer reporting industry.

48.     During this hearing, Senator Bill Nelson, D-Fla., raised serious concerns about the significant and growing numbers of his constituents that had been denied conventional financing due DU Finding Reports wrongly identifying a foreclosure, in addition to, or instead of, a short sale.

49.     After months of prodding from Senator Nelson, the federal Consumer Financial Protection Bureau, the National Consumer Reporting Association and the National Association of Realtors, Fannie Mae announced a change to its automated DU System to "fix" the problem:

*Underwriting when Conflicting or Inaccurate Foreclosure Information Provided on DIL or PFS Tradeline*
Fannie Mae has been made aware that there are often inconsistencies in the credit data when DIL and PFS events occur, and in an effort to assist borrowers in obtaining a new loan in an appropriate timeframe, DU will be updated to disregard the foreclosure information on the credit report when instructed to do so by the lender on the online loan application.

When DU identifies a foreclosure on a credit report tradeline that appears to be one that was subject to a DIL or PFS, the lender may instruct DU to disregard the foreclosure information on the credit report by entering "Confirmed CR DIL" or "Confirmed CR PFS" in the Explanation field for question c. in the Declarations section of the online loan application and resubmitting the loan casefile to DU.  When DU sees this indication, the foreclosure information on the credit report tradeline that also has a DIL or PFS Remarks Code will not be used.

*See* Desktop Originator/Desktop Underwriter Release Notes DU Version 9.1 dated August 20, 2013 (relevant excerpts of which are attached collectively hereto as Exhibit 4) at 6.

50.     While these changes were expected to take effect the week of November 16, 2013, see Exhibit 4 at 1, and were intended to allow consumers to rightfully obtain conventional financing from that point going forward, Plaintiff Walsh, again thereafter was falsely identified on subsequent DU Findings Reports as having previously been subject to a foreclosure instead of a short sale  and, like all other class members herein, he again was denied the ability to obtain residential mortgage financing through Fannie Mae's automated DU System.

51.     Plaintiff Walsh, like all other class members herein, suffered substantial economic and non-economic harm as a result of the false DU Findings Reports Fannie Mae issued through its DU System.

## CLASS ACTION ALLEGATIONS

### A.    CLASS DEFINITION.

52.     Plaintiff Walsh brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other persons similarly situated pursuant to Fed. R. Civ. P. 23(a).

53.     Plaintiff Walsh is a member of the Class he seeks to represent, which is defined as follows:

> All individuals ("consumers" as defined by the FCRA) about whom Fannie Mae issued a DU Findings Report to any mortgage broker or mortgage lender with a "Refer with Caution" recommendation in which Desktop Underwriter identified a foreclosure on an account(s) that also identified the account(s) as subject to a pre-foreclosure sale.

Excluded from the Class are Defendant, Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.  Plaintiff Walsh reserves the right to amend this Class definition if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

54.     The members of the Class are readily identifiable from information and records in Defendant's possession, custody or control.

**B.      NUMEROSITY AND IMPRACTICABILITY.**

55.     The Class is so numerous that it is impracticable to bring all of its members before the Court.

56.     The actual number of Class members can be determined from Defendant's records.

57.     Upon information and belief, Defendant's own records demonstrate that there are tens of thousands of Class members who received a "Refer with Caution"

recommendation and thus were not able to secure mortgage financing because a previous short sale was incorrectly identified as a foreclosure.

### C.   COMMON QUESTIONS OF LAW AND FACT.

58.   The prosecution of the claims of Plaintiff Walsh requires adjudication of questions of law and fact common to the Class.  Such questions include, but are not limited to, the following:

- Whether Fannie Mae's Desktop Underwriter System is subject to the mandates of the FCRA;
- Whether the DU Findings Report is a "consumer report" as defined by the FCRA;
- Whether Fannie Mae, through operation of its Desktop Underwriter System is a "consumer reporting agency" as defined by the FCRA;
- Whether Fannie Mae's Desktop Underwriter System has a uniform policy, practice or procedure that allows a preforeclosure sale such as a short sale to be incorrectly identified as a "foreclosure" for purposes of determining whether a prospective loan would be eligible for delivery to Fannie Mae;
- Whether a uniform policy, practice or procedure that allows a preforeclosure sale such as a short sale to be incorrectly identified as a "foreclosure" for purposes of determining whether a prospective loan would be eligible for delivery to Fannie Mae is "reasonable" as that term is used in the FCRA;
- Whether Defendant has failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual(s) about whom a DU Findings Report relates in violation of the FCRA.

59.   The questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

### D.   TYPICALITY.

60.   Plaintiff Walsh's claims are typical of Class members' claims.

61.   The DU Findings Reports pertaining to Plaintiff Walsh are generated using the same basic process as the DU Findings Reports of the Class.

62.     The alleged flaw in the generation of Plaintiff Walsh's DU Findings Reports are the same for all Class members.

63.     The merits of Plaintiff Walsh's claim hinges on the same systemic conduct as the merits of all Class members' claims.

64.     Plaintiff Walsh and the other Class members have been and are similarly adversely affected by the systematic and uniform policy, practice and procedures complained of herein.

**E.     ADEQUACY OF REPRESENTATION.**

65.     Plaintiff Walsh will fairly and adequately protect the interest of the Class in so far as he is broadly representative of other Class members, as reflected in the preceding Paragraphs.

66.     Plaintiff Walsh's interests are co-extensive with those of Class members in that each would benefit from a declaration that Defendant Fannie Mae is subject to the mandates of the FCRA, and its standard and uniform policies, practices and procedures violate the FCRA.

67.     Plaintiff Walsh has no interests which are antagonistic or adverse to the interest of other class members.

68.     Plaintiff Walsh is willing and able to represent the Class fairly and vigorously as he pursues their common goal through this civil action.

69.     Plaintiff Walsh has also retained legal counsel experienced in litigating major class actions, including those in the field of consumer law, and who are prepared

and able to meet the time and fiscal demands of class action litigation of this size and complexity.

70.      The combined interest, experience and resources of Plaintiff Walsh and his counsel to litigate competently the claims of the Class satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

**F.**      **CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(1).**

71.      Prosecution of separate actions by individual Class members creates the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant Fannie Mae.

**G.**      **CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(3).**

72.      Questions of law and fact common to the members of the Class (as alleged more fully in Paragraph 15 *supra*) predominate over any questions affecting only individual members.

73.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

74.      Most individual members of the Class have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, statutory damages to which each Class member is entitled.

75.      Prosecution as a class action will eliminate the possibility of repetitious and/or inconsistent litigation.

76.     This action will result in an orderly and expeditious administration of claims of members of the Class.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

77.     Absent a class action, Defendant Fannie Mae's violations of the FCRA will continue without remedy.

78.     This action presents no difficulty that would impede its management by the Court as a class action.  When liability of Defendant Fannie has been adjudicated, the damages of members of the Class can be administratively determined.

**H.     CERTIFICATION AS TO LIABILITY ONLY PURSUANT TO FED. R. CIV. P. 23(c)(4).**

79.     Should this Court determine that administrative determination of individual Class members' damages is infeasible or impractical, the predominate common questions as to liability are appropriate for Class-wide treatment.

**CAUSE OF ACTION**

**FAIR CREDIT REPORTING ACT VIOLATIONS**

80.     Plaintiff Walsh hereby incorporates by reference all well-pleaded allegations contained in the preceding paragraphs as if fully rewritten herein.

81.     Section 1681o of the FCRA provides for civil liability against any CRA that is negligent in failing to comply with any requirement imposed under the Act.

82.     Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act.  See 15 U.S.C. § 1681n(a).

**Failure To Adopt And/Or Follow Reasonable Procedures.**

19

83.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  See 15 U.S.C. § 1681e(b).

84.    The DU Findings Reports generated by Fannie Mae's DU System is a "consumer report" as that term is defined by Section 1681a(d) of the FCRA.

85.    On numerous occasions over the past two (2) years, Fannie Mae has prepared a consumer report concerning Plaintiff Walsh, and all other members of the Class herein, and disseminated such report(s) to one or more third party(s), that failed to assure "maximum possible accuracy" of information pertaining to Plaintiff Walsh and members of the Class.

86.    Fannie Mae willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published concerning Plaintiff and members of the Class, in violation of 15 U.S.C. § 1681e(b).

87.    To the contrary, Fannie Mae has affirmatively adopted and follows an unreasonable foreclosure identification procedure that, on its plain terms, knowingly misidentifies non-foreclosures as foreclosures.

88.    As a direct and proximate result of Fannie Mae's willful and/or negligent refusal to follow reasonable procedures as mandated by the FCRA, Plaintiff Walsh and members of the Class, have suffered loss and damage including, but not limited to:

financial loss, loss of credit opportunity, expenditure of time and resources, and/or non-economic loss including without limitation humiliation, and embarrassment, entitling him, like all other class members herein, to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

89.     Fannie Mae's refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff Walsh and all other members of the Class .  The injuries suffered by Plaintiff Walsh and the Class are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681n.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walsh, on behalf of himself and members of the Class that he seeks to represent, requests the following relief against Defendant Fannie Mae:

a.     Acceptance of jurisdiction of this cause;

b.     Certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) *and* Fed. R. Civ. P. 23(b)(1) *or* Fed. R. Civ. P. 23(b)(3) *or* Fed. R. Civ. P. 23(c)(4);

c.     Designation of the Plaintiff Walsh as representative of the Class; and his counsel of record as counsel for the Class;

d.   An award statutory damages if Defendant Fannie Mae is found to have willfully violated the Fair Credit Reporting Act;

e.   An award of punitive damages if Defendant Fannie Mae is found to have willfully violated the Fair Credit Reporting Act;

f.   An award of prejudgment interest if Defendant Fannie Mae is found to have willfully or negligently violated the Fair Credit Reporting Act;

g.   An award of litigation, costs and expenses, including reasonable attorney's fees to the Plaintiff and to members of the Classes;

h.   That a jury try this cause; and

i.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

90.   Plaintiff Walsh respectfully demands a trial by jury on all issues so triable in this lawsuit.

Dated this 27th day of April, 2015.          Respectfully submitted,


/s/ Paul B. Mengedoth
Paul B. Mengedoth, Esq. (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail:  paul@mengedothlaw.com

Sylvia A. Goldsmith, Esq.*
**GOLDSMITH & ASSOCIATES, LLC**

20545 Center Ridge Road, Suite 120
Rocky River, OH 44116
Tel: (440) 934-3025
E-mail:  goldsmith@goldsmithlawyers.com

James A. Francis, Esq.*
John Soumilas, Esq. *
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel:  (215) 735-8600
E-mail:  JFrancis@consumerlawfirm.com
E-mail:  JSoumilas@consumerlawfirm.com


Counsel for Plaintiff Brandon M. Walsh
and all similarly situated individuals.

*Pro Hac Vice Applications Forthcoming